This is a case that came to the 9th Circuit Court of Appeal by petition, filing an appeal asking the court to reverse the Board of Immigration Appeal decision that affirmed the immigration judge's decision to dismiss Mr. Carlos Perez-Mendez's application for silence, withholding of removal and protection of the Convention against Torture. Mr. Mendoza-Perez at this time is a 26-year-old young man who is married to a United States citizen in Seattle, Washington. They have one son who is two years old. The case went to Seattle, Washington in front of an immigration judge. Carlos Mendoza-Perez asked for silence, withholding of removal. Counsel, counsel, counsel, can you hear me? Yes. Your time is quite limited and we are familiar with the facts. So I'd like to take you right to the main issue that is of concern to me. The BIA concluded that the harm that your client experienced was because of a desire to extort money and not because of a protected ground such as family membership or political opinion. And I'd like you to respond to that and tell us why we are compelled to conclude to the contrary. Sounds good, Your Honor. I may start. Like you said, we made a brief and we described that in detail that the BIA made a mistake. This whole case is based on one simple fact that Mr. Carlos Mendoza-Perez was persecuted, physically harmed back in El Salvador because of his membership to his family, Mendoza-Perez family. And since the facts of the case clearly indicate that his father was killed a long time ago, his uncle was killed a long time ago by the same gang members, MS-13. Then his mom became part of the threat and there was significant death threats. So she was forced to leave El Salvador. All of a sudden I left Mr. Carlos Mendoza-Perez and his young sister alone by themselves in this wild country. All this thing is connected to his family and the whole physical harm and persecution against Mr. Carlos Mendoza-Perez is based on simple fact that he belongs to this family. Mr. Mendoza-Perez Carlos has nothing to do with business and extortion. There was no extortion against him. It was clearly indicated to him that he belongs to that family and that family is going to be terminated, killed entirely. He was even forcefully tapped on his back with the name. And when it was done to him by MS-13 gang members, they clearly indicated that they're doing that. So he's their dog. He belongs to them and he cannot run from them in any place in El Salvador. He belongs to them. He's their property. This whole thing was done to them because they belong to that family. And like I said, throughout the past 10, 15 years, all the members of the family were either killed or they were forced to leave the country like his mother did. Mr. Carlos Mendoza-Perez did. And even his sister run El Salvador and the United States at this time. So this physical harm, specific targeting that our client, Mr. Carlos Mendoza-Perez, is based on a reason that he belongs to that family. And he was clearly informed and the gang members told him specifically in person that they do that because he belongs to the family. They did it to his father. They told him that we killed your father. Your mother is the same. Mr. Ocipian, can I interrupt for just a minute? I understand your narrative and what you say is borne out by the evidence in the record. My problem is that under the analysis of the Attorney General in the LEA case, I'm not sure that that actually counts as on a protected ground. It's clear that we've got a family connection and it's clear that the gang is using the family connection as a way of extorting money. But I'm not sure that it coincides now with the definition of family group that the Attorney General has given us in matter of LEA. How do you respond? Oh, matter of LEA has a significance. And like we said in our supplemental brief, but it in any way doesn't change the existing law. And on the contrary, it says that it limits some protection if you're asking for asylum. But at the same time, it doesn't change the existing law. Matter of LEA is different compared to our case. Number one, the respondent in matter of LEA was if he was even persecuted, he was never been physically harmed. No family member was killed or tortured or kidnapped. And the only reason he was attacked because the Mexican cartel members approached the family and said that we want to sell drugs through your store. There is no fact like that in our case. And our case is completely different. Nobody asked Mr. Carlos Perez to use his store because he never had a store. Nobody asked him to sell drugs. He was found after two years, six, ten years in El Salvador where he lived by himself with his sister only by the same gang members. And they recognized him and they tattooed him as Mendoza Perez family member on the back of his shoulder. So this matter, like we said, even if you read the supplemental brief and we stated in there that it clearly says that the attorney general said his own opinion that this opinion does not bar all family based social groups from qualifying for asylum. And he says that we have to do the case by case specific analysis. And what they did, they were like accepted the group, but they said that we send the case back to the remind the case for some portion of boredom. So I think this matter of LEA is completely different from Mr. Carlos Perez Mendoza matter because like I said, Carlos Mendoza Perez personally went through physical harm. His family members were killed personally and everything happened because they belong to the same family. They didn't have store, but I asked them to sell anything. Counsel, you're down to a little over three minutes. Did you wish to save some rebuttal time? No, I'm good. Okay, well, you may either continue for the three minutes or you can save it. So we'll give it to you after the government's lawyer has had an opportunity to argue. Oh, yes, you may continue. Thank you. Now, the case that you decided to ask to supplement with additional brief was, you know, the older like the same thing. The Latino is completely different case. The fact that different has nothing to do with the Mr. Carlos Perez's case. The Latino came to the country legally and he applied for asylum only 10 years after he came to the country. Nothing that happened in the Latino's case matches the fact from Mr. Carlos Perez Mendoza's case because the Latino was not even present in the country when allegedly bad things happened to his family members. And like the court said in the decision, it was only a personal dispute for some land in El Salvador compared to our case. There is no dispute about the land. There is no thing. And Mr. Carlos Perez personally evidenced the murder of his family members. He was personally physically harmed, kidnapped and tortured. On top of that, the Latino came to the country and then he applied for asylum 10 years after he illegally came to the country. And he only heard some rumors that four years after he left El Salvador, bad things happened to his family members. Also, the Latino said that he's afraid to go back because he has some tattoos on his back. And the problem is his tattoos. He was concerned that he might be decided by some gang members that he belongs to a rival gang. Mr. Carlos Mendoza Perez has no tattoos that will associate with the gang. He never said that he's afraid. He has a tattoo that was forcibly put on his back by MS-13 gang members to identify him any place he goes in El Salvador that he is Mendoza Perez's family member. The only good case that we can cite from the four cases that you asked us to write and use as supplemental briefs are the case Rios-Lynch. And this is about Guatemalan gang that took advantage and killed almost all the family members of the respondents. They killed the father, they killed the cousin, and they made threats to kill the sister because they were against them. So our case, Mr. Carlos Mendoza Perez, exactly like Rios' case, he went through the same thing. And in that case, the opinion said that family remains quintessential particular social group. And nothing changed after that. And the opinion of Attorney General Maduro, we also recognize that fact that we just have to follow and conduct case-by-case specific inquiry analysis by the BIA on all the cases. And in our case, almost no analysis was made by BIA in Mr. Carlos Perez Mendoza's case by the same precedent or same requirement from the BIA to conduct case-by-case specific analysis. Diaz-Reynoso's case, that was also supplemented in the brief. It's about Guatemalan women. Even if it's a good case, it was granted. But the group was different in that case. It was mostly of the female who was unable to leave the relationship. But it still was granted, and it went back to the court.  And all the briefs that we supported and sent to the court, we asked the Court of Appeals to reverse the decision of the Board of Immigration Appeals and send the case in the alternative back to the court for new proceedings to do case-by-case specific analysis and conduct specific analysis of Mr. Mendoza Perez's family membership in a specific particular social group. Thank you, counsel. Thank you very much. We'll hear now from the government. Your Honors, can you hear me okay? Yes. I don't know where that music is coming from, but that's got to stop, whatever that is. Okay. Okay. We'll try again. Okay, Your Honors. Tony Pottinger for the respondent. As fellow counsel pointed out, these were horrible events for Petitioner and his family. No reasonable person would dispute that. However, the controlling factor... Mr. Pottinger, can you speak up a little bit, please? Sure. Sorry, Your Honor. Yes, sir. These were horrible events. No reasonable person could dispute that. However, this is a case about nexus. The various cases in the supplemental briefing order bear that out. We wouldn't endeavor to compare factually to Cetino. However, what's important about Cetino is that case was decided upon nexus. And in this case, Petitioner's counsel talks about this case-by-case analysis. Yes. If the agency were to address cognizability of the group in the first instance, then yes. Under LEA and Diaz-Renoso and Rios, they must do that analysis. However, they don't have to address cognizability. They can decide this on nexus. Counsel, I'd like to actually point you to the other issue in the case, because that's of concern to me from your perspective, and that is the Catt claim. The only reason the BIA gave for its decision was that the documentary evidence demonstrated only, quote, the general possibility of torture, end quote. And so he didn't meet the burden to show that he personally would be subjected to torture. But the agency also credited his testimony as true. And it seems to me that with the number of threats and the number of killings, including the gang following him when he tried to move to get away from them, that he indeed showed personal information that he would be tortured, that is, killed. And so the agency never went on to examine the second prong, which is, is that something that's done with the government's acquiescence or participation? But I don't understand how we could hold that the BIA's decision in that regard is correct. Your Honor, I would say that they did credit him with credibility early on. That said, in our position, under the substantial evidence standard, it doesn't compel reversal. But it isn't a matter of substantial evidence exactly. It's a matter of they're looking only at the evidence of general possibility of torture. And it seems to me that the record does compel a finding that he provided more than a general possibility of torture. He was very specific as to him. So I don't understand how that summary by the BIA is supported by substantial evidence. I would only say, Your Honor, that in this case, they did earlier in the decision acknowledge that other evidence, the threats, et cetera. I don't think they were blind to it. We've certainly seen some board decisions where there's no mention whatsoever of the petitioner's claims. And that can be a problem. Same time, I don't want to step too far outside my lane here on Chenery and say something the board didn't say. Yes. That's our problem, because we can rely only on what the board actually said and did. And that there is a single sentence that the evidence is of the general possibility of torture only. And that's their reason. And if that reason doesn't stand up, they may have other grounds for denying ultimately. But it seems to me that that is unsupportable. I think, Your Honor, I would say that this court can rely on the presumption that generally we give agencies that they considered all the evidence. They don't have to always articulate every piece of it. And I think the term is right, an exegesis about it. I don't say that to be flippant or to downplay petitioner's claims. But in this case, I think the court, especially looking at the body, the whole body of the decision, could comfortably deny the Catt claim based on... It isn't a matter of not looking at the evidence. It's a matter of their conclusory statement about how they evaluated it seems completely inaccurate in that one respect. But I understand your position. Thank you, Your Honor. If I could step back just briefly to Nexus and then I'll conclude subject to any questions. And I would just talk a little bit about petitioner's and his mother's testimony, which take this more in the direction of a Zatino case and not on account of a protected ground case. I would look at administrative record AR 117, 133, 141, 170, just to name a couple. And I'll just do a couple of quotes from petitioner's mother. They thought because I had the business, I had money. And then later she says, well, because they were talking about the gang members, they realized that I was here and they thought I had a lot of money. That's what I think. And that's why they started bothering Mr. Mendoza-Perez. I think this testimony is firm grounds for why the agency didn't reach cognizability and why they were proper in denying it for failure to establish Nexus. And for those reasons, we'd ask the court to affirm the agency decision. Before you sit down, I'd like to pursue the LEA case and whether it controls or to what degree it might be thought to control here. We heard a distinction, which I think is true on the facts that in LEA, the petitioner was pressured to sell drugs in the family store. And I'm not sure that they were using him as leverage on somebody else within the family. The underlying facts here are really quite different. What we have here is a family business originally in the bakery. The mother pays for a little bit, then doesn't pay any more and is told, well, if you don't pay, we're going to kill family members. And then pursuant to that, they kill her husband. Further, they then kill the husband's brother. And they then threatened the petitioner, all going after members of the family, identifiable as members of the family, in order to accomplish this aim. That's really a different set of facts from the facts in LEA. Is there something in LEA, not just on the facts, but in the way the BIA articulates its standard for what constitutes a cognizable social group of family that would control this case? Well, here, because in our case, in the petitioner's case, the agency did not reach cognizability in the first instance, which is why if the court disagrees with our nexus argument, you should remand to the agency so they could actually address cognizability. So if that were to happen, then a matter of LEA and a matter of LEA 2 would be instructive and informative for the agency. However, why I think it's important to talk about LEA right now is that was a mixed motive case. We don't have that here. We have the agency decided there was a single motive, and that was criminal activity, which is why they ultimately denied the claim. For the same reason, I don't see Diaz-Reynoso as applicable because that was a, yes, different facts in terms of what that petitioner experienced, but it was also a different decision-making process by the agency. There, the agency erred because they misapplied matter of AB. Here, the agency did not rely on matter of AB in its nexus analysis. Same goes with Rios. There, the immigration judge made a key mistake early on where he misapprehended the particular social group that petitioner was claiming. That petitioner was claiming a family-based group, but the IJ failed to analyze a family-based group and analyzed a different type of group. The board doubled down on that error and didn't fix it, and for that reason, the case was sent back. I talk about these cases not so much as factual comparisons in terms of the petitioner's differing experiences, but rather in the mistakes that the agency made in terms of how they analyzed the claim. Again, I would say that this is not a cognizability case unless it were to go back to the agency for that finding because they haven't done that. They relied solely on nexus, which under this court's precedent, including Zatino and Riera, can be dispositive without even reaching cognizance. Subject to your questions, the government would yield its remaining time and submit on the brief. Thank you. Thank you, counsel. I don't believe we have any more questions. Mr. Recipient, you used all of your time, so there's none left for rebuttal. The case just argued is submitted, and we give our thanks to both counsel for helpful arguments.
judges: Graber, W. Fletcher, Freudenthal